UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CONSUMER ELECTRONICS ASSOCIATION, INFORMATION TECHNOLOGY INDUSTRY COUNCIL, ITAC SYSTEMS, INC., and WILLIAM SODERBERG, <br><br> Plaintiffs, <br><br> v. <br><br> CITY OF NEW YORK, MICHAEL R. BLOOMBERG, in his official capacity as Mayor of the City of New York, NEW YORK CITY DEPARTMENT OF SANITATION, JOHN J. DOHERTY, in his official capacity as the Commissioner of the Department of Sanitation, and ROBERT LANGE, in his official capacity as Director of Waste Prevention, Reuse and Recycling of the Department of Sanitation, <br><br> Defendants, <br><br> NATURAL RESOURCES DEFENSE COUNCIL, INC., <br><br> Intervenor Defendant. | **09 Civ. 6583 (WHP)** <br> **ECF Case** |

BRIEF OF *AMICI CURIAE*
**THE NATIONAL ASSOCIATION OF MANUFACTURERS, THE NATIONAL
ELECTRICAL MANUFACTURERS ASSOCIATION, THE AMERICAN LIGHTING
ASSOCIATION, THE CARPET AND RUG INSTITUTE, THE AMERICAN FOREST &
PAPER ASSOCIATION AND THE BUSINESS COUNCIL OF NEW YORK STATE, INC.
IN SUPPORT OF PLAINTIFFS**

Of Counsel:

Marcus W. Ferguson
Heather C. Briccetti
Business Council of New York State, Inc.
152 Washington Avenue
Albany, NY 12210
(518) 465-7511

Lara E. Romansic (LR-9236)
Steptoe & Johnson LLP
750 Seventh Avenue
New York, NY 10019
(212) 506-3900

Betty Jo Christian
Timothy M. Walsh
Steptoe & Johnson LLP
1330 Connecticut Avenue, N.W.
Washington, DC 20036
(202) 429-3000

December 11, 2009

*Counsel for Amici in Support of Plaintiffs*

## TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................................................. i

TABLE OF AUTHORITIES ......................................................................................... ii

INTRODUCTION ............................................................................................................1

INTEREST OF *AMICI CURIAE* ................................................................................3

ARGUMENT..................................................................................................................12

CONCLUSION...............................................................................................................13

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*Healy v. Beer Inst.,* 491 U.S. 324 (1989) ........................................................................2

*U.S.A. Recycling, Inc. v. Town of Babylon*, 66 F.3d 1272 (2d Cir. 1995) ......................1

CONSTITUTIONS

U. S. CONST. art. I, § 8, cl. 3 (Commerce Clause) ...........................................2, 4, 8, 13

U. S. CONST. amend. V (Due Process Clause) ...............................................................8

STATUTES

N.Y.C. Administrative Code §§ 16-420 *et seq.* ...............................................................1

R.C.N.Y. §§ 17-01 *et seq.* ...............................................................................................1

R.C.N.Y. § 17-04(a) .........................................................................................................4

Pursuant to Paragraph (3) of the Stipulated Order on Scheduling entered by the Court on November 18, 2009, the undersigned *Amici Curiae* submit this brief in support of Plaintiffs. *Amici* are the National Association of Manufacturers, the National Electrical Manufacturers Association, the American Lighting Association, the Carpet and Rug Institute, the American Forest & Paper Association and the Business Council of New York State, Inc.

As Plaintiffs have shown, New York City's new electronics recycling and reuse law, N.Y.C. Administrative Code §§ 16-420 *et seq.*, and regulations implementing it, R.C.N.Y. §§ 17-01 *et seq.* (collectively, the "E-waste Program"), will impose immediate and substantial burdens on interstate commerce in the electronic products it covers. *Amici* are also greatly concerned that allowing the E-waste Program to take effect will encourage other jurisdictions to adopt laws that shift disposal costs historically borne by voting local taxpayers who discard consumer products onto non-voting, out-of-state or off-shore manufacturers who make them. *Amici* accordingly request that Plaintiffs' Motion be granted, and that the Court issue a preliminary injunction barring implementation of the E-Waste Program.

## INTRODUCTION

For over a century, "it has been settled law that garbage collection and disposal is a core function of local government in the United States." *U.S.A. Recycling, Inc. v. Town of Babylon*, 66 F.3d 1272, 1275 (2d Cir. 1995). In particular, "New York municipalities have a duty to ensure proper collection and disposal of trash for the well-being and health of the community." *Id.* at 1283 (citations omitted). And as with any municipal service, each municipal government is answerable to city voters for the quality of that service and the tax costs it creates.

New York City's E-waste Program would abandon this regime of local accountability by shifting most of the burden of disposal for electronics to out-of-state, non-voting manufacturers.

That burden has historically been borne by local actors who use consumer products and later discard them as waste that must then, but only then, be collected and disposed of—waste *generation* that is by its nature local.  Those local generators of consumer product waste choose where and when they discard the used goods.  Many are entitled to vote for—or against— members of the City Council.  By contrast, the makers of those products are mainly located outside New York.  Virtually none produce goods in New York City; many of the electronics products that wind up being discarded in New York are first sold to consumers or middlemen outside the boundaries of both the City and the state.  And out-of-state manufacturers have no vote in City Council elections.

As Plaintiffs have shown, shifting this burden to out-of-state manufacturers who have no presence in—and indeed sell their products outside of—New York City violates the Commerce Clause of the United States Constitution, U. S. CONST. art. I, § 8, cl. 3.  *See* Plaintiffs' Memorandum at 14-18, citing, *inter alia*, *Healy v. Beer Inst.,* 491 U.S. 324 (1989). Implementation of New York City's unconstitutional E-waste Program consequently should be enjoined.

*Amici* hope to assist the Court in its analysis of the constitutional issues by describing how the E-waste Program and similar laws requiring out-of-state manufacturers to pay the costs of collection, disposal and recycling would affect their members.  Understanding how laws of this nature necessarily extend local regulatory powers to manufacturing and sales activities that take place far outside the home state's borders confirms that such attempts to export product disposal costs are unconstitutional.

## INTEREST OF *AMICI CURIAE*

*Amici* are business and trade associations whose members include companies that manufacture and sell a wide range of consumer products.  Many of those manufacturers are neither located, nor do business, in New York.  Their production facilities are far outside New York City—and indeed often outside the United States—and they sell their products through independent distributors, wholesalers or retailers, many of which likewise are outside of and have no connection with New York.

Nonetheless, some of the goods they manufacture undoubtedly wind up in New York City.  Vendors that buy goods from manufacturers out-of-state resell them to consumers at retail outlets in the city.  And because New York City has always been a magnet for people from throughout the Nation and the world, individuals move into the city bringing their chattels with them.  In either case, the products may wind up being disposed of in New York City by the ultimate consumers.

Some of those products are subject to the E-Waste Program.  But from the perspective of the Nation's manufacturers, that is only the tip of the iceberg.

If New York City's E-Waste law is allowed to go into effect, it will send a strong—perhaps irresistible—message to other financially-pressed state and local governments that here is a new way to reduce one of their major costs:  shifting the burden of collecting and disposing of discarded consumer goods away from their own taxpayers, who actually discard the products, and onto manufacturers located far beyond their own borders, who do not vote in their local elections.  Indeed, a number of proposed producer responsibility laws are currently pending across the United States.  *See, e.g.,* http://www.productstewardship.us/ (website of Product Stewardship Institute, an *amicus curiae* on behalf of Defendants).

*Amici* understand Defendants have argued that Plaintiffs' challenge to the New York City E-waste Program is premature because the implementing regulations appear to permit waivers of fees and other requirements. *See* Defendants' Opposition Memorandum at 9 (citing Lange Decl. ¶¶ 68-77). The very language of the regulations, however, makes clear that the waiver rule does not afford any defense against the constitutional violations the E-waste Program presents.[1] It is not a valid basis for permitting the Program to take effect even provisionally—which in any event would encourage other jurisdictions to adopt similar laws in the meantime.

*Amici* briefly describe below the severe impact that the proliferation of state and local laws such as New York City's E-Waste law would have on their respective members. That impact is precisely the sort of burden that, as Plaintiffs have detailed, violates the Commerce Clause of the Constitution.

The *National Association of Manufacturers* ("NAM") is the nation's largest industrial trade association, representing small and large manufacturers in every industrial sector and in all 50 states. The NAM's mission is to enhance the competitiveness of manufacturers by shaping a legislative and regulatory environment conducive to U.S. economic growth, and to increase understanding among policymakers, the media and the general public about the vital role of manufacturing to America's economic future and living standards.

---

[1] The regulations do *not* permit waiver based solely on the fact that a manufacturer does not do business in New York City or State. To the contrary, the Final Rules expressly say that a "'waiver shall *only* be approved upon a detailed showing of good cause by the manufacturer why it is *unable to comply* with any such requirement.'" *See* Lange Decl. ¶ 69, quoting 16 RCNY § 17-04(a) (emphasis added). The italicized language clearly requires a showing of inability to pay the fee or otherwise comply with the Program's requirements, and there is no suggestion in the regulation that extraterritoriality alone can justify waivers. As a matter of law, the Program thus applies to extraterritorial manufacturers generally, and is invalid on its face as a violation of the Commerce Clause. *See also* Plaintiffs' Reply Memorandum at 19-20.

The manufacturing facilities of NAM members are located all over the world—in Asia, Latin America and Europe as well as in the United States.  It is a simple matter for a city or state to identify consumer products that are not manufactured locally and to focus on those products as a means to shift the costs of collection and disposal or recycling to out-of-state manufacturers. Local citizens are further favored by provisions that prohibit the targeted manufacturers from charging a fee for the collection and disposal services they are required to perform.  As a consequence, New York City's E-waste Program and laws modeled on it that cover other types of products will impose a severe burden on NAM members.  The cumulative impact of permitting such laws to go into effect could be enormous.

Moreover, the financial burden imposed on out-of-state manufacturers is not limited to the direct costs of collecting and recycling of products discarded by the City's local consumers, which itself is substantial.  Another key and particularly troublesome element of the New York City Program is its establishment of arbitrary performance standards that *require* manufacturers to collect a specified volume of products each year—whether or not they are tendered by the consumers discarding the products—and establish stiff monetary penalties for failure to meet that quota.  And the quotas themselves are wholly arbitrary, with the numbers apparently "pulled out of thin air" in order to meet some wished-for result.  There is no realistic way for a manufacturer to avoid incurring the penalties.

This effort to shift to out-of-state manufacturers costs that should properly be borne by New York City's own residents and taxpayers raises serious constitutional issues.  Because of the potential impact on its members, NAM urges that a preliminary injunction be granted to prevent the E-waste Program from going into effect.

The *National Electrical Manufacturers Association* ("NEMA") is a trade association that represents 375 manufacturers of equipment used in the generation, distribution and control of electricity.  Those products include factory automation, lighting, energy storage, residential and building controls, transportation safety equipment, scanning equipment for transportation security, building construction, wire and cable, high voltage equipment for utilities and medical imaging equipment of all modalities.  Most of the products made by NEMA members are not subject to New York City's E-waste Program, but the manufacturers are concerned that similar programs that do apply to their products may be adopted by other cities or states if the Program is allowed to go forward.[2]

NEMA's members have manufacturing plants all over the United States and indeed the world.  None, however, manufactures products in New York City, and except for a very small volume of e-commerce from some manufacturer websites for a few electrical products, none sells products directly to consumers who might ultimately discard them there.

NEMA and its members endorse environmentally conscious design and have been at the forefront of efforts to eliminate or reduce hazardous substances consistent with necessary product performance requirements and electrical safety, and to encourage efficient recycling programs through a shared responsibility approach.  Indeed, in November 2009 NEMA formally adopted a "Statement of Principles" that emphasizes those concepts.[3]  However, NEMA is convinced that New York City's E-waste Program is the wrong approach.  This is not only because it singles out manufacturers—primarily out-of-state and foreign manufacturers who sell their products outside New York—but also because it departs from the long-standing principle

---

[2] Laws are being proposed or have been enacted for alkaline batteries, fluorescent lighting, and residential thermostats in some states.  The New York City Council has a bill before it (Intro 922) that would make lamp manufacturers responsible for collecting all lamps.

[3] Available at http://www.nema.org/gov/env_conscious_design/index.cfm .

that the *generators* of waste—in this case, New York City residents and businesses—have the responsibility to pay for disposing of what they use, benefit from and then discard.[4]

The problems with New York City's Program largely stem from its attempt to single out manufacturers but spare taxpaying residents from the costs of disposal. The E-waste law does not allow anyone to charge a fee to New York City residents for the unfunded mandate it imposes on manufacturers—a mandate Defendants have admitted to be "cost prohibitive" for themselves. *See* Plaintiffs' Memorandum at 20 & n.4. Manufacturers have no control over how consumers dispose of their products after benefiting from their use. Consumers, who are the waste *generators*, are best suited to dispose of such items in environmentally conscious ways, such as special recycling bins for particular types of waste or special curbside pick-up arrangements (New York City's E-waste law effectively acknowledges as much by mandating that residents not dispose of certain items as solid waste). However, there is no way for a manufacturer to compel consumers to do so, with the result that the Program penalizes *manufacturers* for *consumer* conduct. Moreover, its penalties are based on goals that are unattainable and numerical formulas that are not susceptible to reasonable calculation. *See also* Plaintiffs' Reply Memorandum at 19-20, 22.

_____

[4] The rationale for mandating that producers be financially responsible for end-of-life management of the products they make is that manufacturers alone have the ability to reduce the lifecycle impact of their products by reducing or eliminating hazardous material content. But that rationale is not reflected in the producer-responsibility laws being adopted. NEMA's alkaline battery manufacturers eliminated mercury from batteries in the 1990s and yet it is proposed that they be responsible for recycling alkaline batteries *without* mercury. There has been a spectacular reduction in the amount of mercury in energy-saving fluorescents—some 85% since the 1980s—and the use of compact fluorescent lamps is heavily promoted to consumers by federal and state energy efficiency policies; lamp manufacturers are also investing heavily in commercializing light emitting diode technology, an even more energy-efficient lamp that will not require mercury. Nonetheless, having already made the substantial investment in eliminating or reducing hazardous substances, lamp and battery manufacturers are being targeted to shoulder disposal and recycling costs as well. Such laws are inconsistent with the rationale of the producer responsibility approach, which is why NEMA promotes *shared* responsibility.

In addition, serious constitutional problems under both the Commerce Clause and the Due Process Clause are raised by the fact that the E-waste Program creates retroactive liability for goods that manufacturers produced and sold long before its enactment. Whatever incentives its sponsors may have sought to create have absolutely no impact on the huge volume of products that already exist, and to which the law simply shifts disposal costs from the City and its residents to manufacturers. Indeed, if manufacturers of existing products have gone out of business, the E-waste Program shifts responsibility for their products to other manufacturers, who never had any connection whatsoever to them. In short, while NEMA fully supports the concept of shared responsibility among all stakeholders for end-of-life product management, it believes that New York City's Program is unworkable, unfairly penalizes manufacturers and, for the reasons explained by Plaintiffs and Mayor Bloomberg, violates the Constitution.

The *American Lighting Association* ("ALA") is a trade association that represents the residential decorative lighting industry. Its members include manufacturers of all types of lighting products in the United States, Canada and the Caribbean. Products manufactured by ALA members include recessed lights, track lights, compact fluorescent lights, pendant lights, chandeliers, sconces, ceiling fan lights, dimming controls and outdoor lights. Most of ALA's members are U.S. companies, but 90% of their products are manufactured overseas, primarily in China and other Asian countries. Apart from a single assembly operation in the Bronx, no plants making those products are located in New York City. Goods produced by these manufacturers are sold through "big box" stores (50%), independent lighting showrooms (40%) and on-line retailers (10%). The manufacturers themselves do not sell directly to consumers.

While New York City's E-waste Program does not cover the types of products ALA's members manufacture, it departs from traditional municipal and consumer responsibility for

product disposal.  If a city can reach across state lines to require a manufacturer to pay for how (and where) a consumer ultimately discards its products—and impose those costs retroactively even many years after the products were sold—no one will be in a position to decide where to make and sell goods based on the costs of doing business in a particular state or city.  Moreover, the financial burden that proliferation of laws like this will create is staggering.  Each individual manufacturer will face distinct obligations under multiple state and city rules; the cumulative effect will be not only prohibitive collection and disposal costs but also resource-draining reporting and record-keeping under numerous varying regimes.  Out-of-state businesses should not be made to shoulder such onerous burdens for consumers who choose to discard goods in a given town.  The constitutional issues this sort of extraterritorial regulation present have led ALA to join this submission and ask the Court to grant Plaintiffs' request for an injunction.

The *Carpet and Rug Institute* ("CRI") is a trade association whose more than one hundred members include manufacturers of nearly all carpet made in the United States, as well as their suppliers and service providers.  Approximately eighty-five percent of the carpets and rugs produced for the U.S. market are produced in Georgia.  No carpet or rug manufacturer makes products in New York City or New York State.

Most CRI member manufacturers do not sell products directly to consumers.  Consumers typically buy carpets and rugs through independently owned third parties such as carpet dealers and retail stores, and title to the products usually passes from the manufacturer at its plant.

When existing carpet is being replaced, the dealer—not the manufacturer—usually will arrange for its disposal.  Often, however, the consumer can obtain a discount on the price of the new carpet by agreeing to handle the disposal of the old carpet himself.  In that case, and in the

case of most rugs discarded by consumers, such used products become the responsibility of local garbage collection and disposal authorities.

CRI estimates that some five billion pounds of carpet is disposed of in the U.S. annually. While carpets and rugs do not contain hazardous materials, they can present disposal issues because of their size, bulk and non-biodegradable content.  The industry has worked to address those issues through an organization dedicated to finding ways of recycling carpets and rugs, which is known as CARE—the Carpet America Recovery Effort.  However, large volumes of used products continue to be discarded by consumers, and thus could become targets of laws designed to shift disposal costs from consumers to manufacturers.

For these reasons, CRI is very concerned about laws like New York City's Program. That concern is not misplaced:  The Product Stewardship Institute, an *amicus* supporting Defendants (in which the City is an affiliate member), lists carpet as one of its "priority product categories" for which they advocate the enactment of laws similar to that at issue here.  *See* http://www.productstewardship.us/

If a city or state anywhere in the country could reach out to impose similar disposal costs and obligations on manufacturers of carpets and rugs—who as noted are almost all in Georgia— the burden would be enormous.  And because the products are sold by their manufacturers to independent middlemen such as dealers and retailers before reaching consumers, there would be no way for manufacturers to limit those burdens by seeking to keep their products from being sold in jurisdictions that adopt such laws.

The *American Forest & Paper Association* is the national trade association of the forest products industry, representing 74 pulp, paper, packaging and wood products manufacturers, and forest landowners.  The forest products industry accounts for some five to six percent of the total

U.S. manufacturing GDP, produces $200 billion in products annually and employs nearly one million people earning approximately $50 billion in annual payroll.  The industry is among the top ten manufacturing sector employers in 48 states.

Many of the Forest & Paper Association's member companies recycle and use recovered fiber in their products.  The industry is heavily engaged in recycling, and as a whole recovers almost 60 percent of paper products—approximately 58 million tons per year—without government intervention or mandates.  Use of recovered fiber in paper products and recycling of wood products diverts the fiber from landfills, which decreases methane emissions.

The Forest & Paper Association is concerned about the effect of the New York City E-waste Program on the recycling stream.  If extended to other industries—in particular the paper industry—mandates and penalties such as this could negatively affect the recovery of fiber through imposition of unnecessary and prohibitive costs.  Laws like New York City's could, in other words, be detrimental to the environment by disrupting and discouraging industry activities that are already doing a good job of controlling waste disposal.  They could actually result in *less* paper recycling than is being achieved through voluntary efforts today.

The *Business Council of New York State, Inc.* is a state-wide association that has almost three thousand member firms, seventy-two percent of whom are small businesses.  The Council's members employ more than 1.2 million New Yorkers.  The primary function of the Council is to serve as the advocate for employers in New York, working for policies that create a healthier business climate, promote economic development and job growth, and further government reform.

Several Business Council members have a special interest in New York City's E-waste Program because they manufacture products that would be subject to this new legislation.  The

Council is concerned that the Program would impose undue financial burdens on those members. It understands that estimated compliance costs would be very high, totaling more than $200 Million annually.  *See, e.g.,* Plaintiffs' Reply Memorandum at 27.  Those costs (as well as the Program's mandated fees) would have to be borne solely by the manufacturers.  The Council estimates that the Program would cost each affected member several million dollars a year.

The costs would rise much higher—and more of the Business Council's members would be burdened—if the Program were extended to the disposal of other types of products or if other cities or states adopted similar laws.  Indeed, letting New York City's Program take effect notwithstanding the serious constitutional problems it presents could encourage jurisdictions outside New York to take steps to recover disposal costs from New York based manufacturers.

The pick-up and disposal of waste of all types has always been the responsibility of the municipalities.  The Business Council's members are willing to work with the state or local governments, but the approach that has been adopted by New York City simply goes too far.

## ARGUMENT

If New York City's E-waste Program is allowed to go into effect, it will impose immediate burdens on interstate commerce in electronics products.  The extensive, settled precedent demonstrating that the Program violates the Constitution has been presented by Plaintiffs at length, so *Amici* need not repeat that legal argument here.  *See* Plaintiffs' Memorandum at 14-18, Plaintiff's Reply Memorandum at 11-23 and cases cited therein.

But the problem does not end there.  Allowing New York City's Program to take effect will also encourage other financially-strapped jurisdictions to enact laws that unconstitutionally burden interstate and foreign commerce by shifting collection, disposal and recycling costs for any number of consumer products from local taxpayers onto out-of-state manufacturers.  *Amici*

have explained above how such laws would burden commerce involving their respective members, which include manufacturers in a wide range of important industries.

A cascade of extraterritorial disposal laws would not only violate the Commerce Clause; it would also be a marked departure from the traditional responsibility of local governments and taxpayers for the disposal of discarded consumer goods. The path down which New York City is seeking to proceed is neither constitutional nor wise.

## CONCLUSION

For all these reasons, *Amici* support Plaintiffs' Motion and urge the Court to enjoin implementation of New York City's E-waste Program.

DATED:  December 11, 2009
             New York, New York

Of Counsel:

Marcus W. Ferguson
Heather C. Briccetti
Business Council of New York State, Inc.
152 Washington Avenue
Albany, NY 12210
(518) 465-7511

Respectfully submitted,

/s/ Lara E. Romansic
Lara E. Romansic (LR-9236)
Steptoe & Johnson LLP
750 Seventh Avenue
New York, New York 10019
(212) 506-3900

Betty Jo Christian
Timothy M. Walsh
Steptoe & Johnson LLP
1330 Connecticut Avenue, NW
Washington, DC 20036
(202) 429-3000

*Counsel for Amici Curiae the National Association of Manufacturers, the National Electrical Manufacturers Association, the American Lighting Association, the Carpet and Rug Institute, the American Forest & Paper Association and the Business Council of New York State, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I caused to be served upon the parties listed below by ECF on

December 11, 2009, a true and correct copy of the annexed Brief of *Amici Curiae*

the National Association of Manufacturers, the National Electrical Manufacturers Association,

the American Lighting Association, the Carpet and Rug Institute, the American Forest & Paper

Association and the Business Council of New York State, Inc. in Support of Plaintiffs.

/s/ Lara E. Romansic